Mary **BAILEY,** Plaintiff–Appellee,

v.

**BLUE CROSS & BLUE SHIELD OF VIRGINIA,** Defendant–Appellant.

No. 94–2531.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1995.

Decided Oct. 11, 1995.

**ARGUED:** Thomas E. Spahn, McGuire, Woods, Battle & Boothe, L.L.P., Richmond, VA, for Appellant. Robert Edward Hoskins, Foster & Foster, Greenville, SC, for Appellee. **ON BRIEF:** Bradford A. King, McGuire, Woods, Battle & Boothe, L.L.P., Richmond, VA; Robert W. McFarland, Richard J. Cromwell, McGuire, Woods, Battle & Boothe, L.L.P., Norfolk, VA; Jeanette D. Rogers, Blue Cross and Blue Shield of Virginia, Richmond, VA, for Appellant. Timothy G. Clancy, Cumming, Hatchett, Moschel & Patrick, Hampton, VA, for Appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge BUTZNER joined.

## OPINION

ERVIN, Chief Judge:

Insurer Blue Cross/Blue Shield of Virginia ("Blue Cross") challenges the district court's

grant of summary judgment in favor of one of its policyholders, Mary Bailey. Bailey, who has breast cancer, seeks coverage for high dose chemotherapy that she claims is necessary to treat her condition. Blue Cross contends that it has no obligation to pay for the procedure, because it is excluded under Bailey's policy. We find that Bailey is entitled to coverage as a matter of law and, therefore, affirm the district court's grant of summary judgment.

## I.

Mary Bailey, who suffers from stage IV breast cancer, has health insurance with Blue Cross through her husband's company, Bailey Enterprises. In June 1994, Bailey sought coverage for a procedure to treat her breast cancer known as high dose chemotherapy with peripheral stem cell rescue ("HDC/PSCR"), which her doctor recommended as offering her the best chance for survival.[*] In summary, high doses of chemotherapy are considered more effective in killing cancer cells, and thus can be used to treat breast cancer. Unfortunately, in addition to killing malignant cells, the treatment also kills healthy white blood cells in the patient's blood stream and bone marrow, leaving her susceptible to deadly infections. To combat this problem, doctors have developed procedures in which a patient's "peripheral stem cells" are harvested prior to the administration of high dose chemotherapy or radiation. After the body is flooded with cancer-killing agents, the healthy cells are reinfused into the body to protect the patient against disease.

Blue Cross denied Bailey's request to fund the treatment described above, claiming that her policy excluded it. The insurer based its denial on an amendment to Bailey's policy that stated: "Autologous bone marrow transplants or other forms of stem cell rescue (in which the patient is the donor) with high dose chemotherapy or radiation are not covered." *Joint Appendix* at 180. Thereafter, the policy lists several exceptions, immediate-

ly followed by the disclaimer: "Autologous bone marrow transplants or other forms of stem cell rescue (with high dose chemotherapy and/or radiation), for all other cases are not covered. These include but are not limited to the following: ... Breast cancer...." *Id.* at 181. Blue Cross also relied on section VI(B) of the policy, which declares: "[T]he extent to which a Covered Person is entitled to benefits under the Policy shall be determined by the Company in its sole discretion." *Id.* at 294.

Conceding that the policy provisions above exclude the peripheral stem cell rescue ("PSCR") portion of her treatment, Bailey contends that high dose chemotherapy is included, since chemotherapy is listed under the policy's definition of covered therapy services:

> These are the following services or supplies ordered by a provider used to treat or promote recovery from an illness or injury ... (2) chemotherapy. the treatment of malignant disease by chemical or biological neoplastic agents. Oral chemotherapy is covered only if a drug used requires a physician's written prescription to obtain.

*Id.* at 158; *see also id.* at 164–66 (stating that the referenced "outpatient therapy services" are covered).

On September 13, 1994, Bailey filed suit in the United States District Court for the Eastern District of Virginia. On September 28, the district court granted Bailey's motion for a preliminary injunction prohibiting Blue Cross from denying payment for the treatment she had requested. *Id.* at 328–42. The parties then filed cross-motions for summary judgment. On October 31, the district court granted Bailey's motion and denied that of Blue Cross. The court found that the policy was ambiguous as it related to coverage for high dose chemotherapy:

> Defendants did not clearly exclude the HDC which if[sic] finds was specifically provided for elsewhere in the Policy, and as such the ambiguous clause is construed

---

[*] We have described in detail the treatment sought by Bailey on other occasions. For further discussion of the technical aspects of this treatment, see *Wheeler v. Dynamic Engineering, Inc.*, 62

F.3d 634 (4th Cir.1995); *cf. Hendricks v. Central Reserve Life Ins. Co.*, 39 F.3d 507, 510 (4th Cir. 1994).

against the insurer. The Court makes this finding in light of the deference to be accorded to the administrator of the Policy under the facts of this case.

*Id.* at 373.

Blue Cross filed timely notice of appeal to this court. As this is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the district court possessed subject matter jurisdiction pursuant to 29 U.S.C. § 1132. Appellate jurisdiction is proper under the authority of 28 U.S.C. § 1291.

## II.

### A.

■ We review *de novo* the district court's grant of summary judgment. *Ramos v. Southern Md. Elec. Coop.,* 996 F.2d 52, 53 (4th Cir.1993). In a contractual matter such as this, "[w]here a case turns simply upon a reading of the document itself, there is no reason to believe that a district court is in any better position to decide the issue than is an appellate court," and we therefore exercise plenary review over the lower court's interpretation of the contract. *Hendricks,* 39 F.3d at 512. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir.1990). In making this determination, we must view the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 233 (4th Cir.1991). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." *O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52,

106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

■ Apart from the standards we use to evaluate the district court's rulings, we must also address the appropriate measure with which to review Blue Cross's denial of benefits under the ERISA plan it administers. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 108–115, 109 S.Ct. 948, 953–57, 103 L.Ed.2d 80 (1989). As noted above, that policy permits Blue Cross to determine the extent to which an insured is entitled to benefits "in its sole discretion." *Joint Appendix* at 294. Bailey argues that this language does not vest Blue Cross with discretionary authority, and that review is therefore *de novo.* Rather than vesting discretion in the plan administrator, Bailey contends that the provision at most "empowers some employee of Blue Cross to review claims to determine the *amount* or *extent* of coverage which exists for a particular claim." *Brief of Appellee* at 8. Based on the policy's plain language, we reject Bailey's interpretation that Blue Cross does not have the discretionary authority to qualify as a fiduciary under ERISA. *See* 29 U.S.C. § 1002(21)(A).

■ That Blue Cross has discretionary authority as plan administrator does not end our inquiry, however.

[W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80, 87 (4th Cir.1993). Blue Cross concedes that it operated under a conflict of interest when it denied the benefits sought by Bailey. It argues, though, that the district court erred by not articulating

the degree of (lessened) deference it accorded Blue Cross's decision. Although the district court did not elaborate specifically on the degree of deference it considered appropriate, the lower court correctly articulated the legal standard we established in *Doe*. *Joint Appendix* at 364. Furthermore, after citing the relevant case law, it expressly found that Bailey was entitled to summary judgment "in light of the deference to be accorded to the administrator of the Policy under the facts of this case." *Id.* at 373. Although a more extensive analysis might have been helpful, we cannot say that the district court erred in its application of the law. A more thorough explanation might have been necessary had the conflict of interest not been as total as that in this case, where Blue Cross stood as the single beneficiary of a substantial sum based on its denial of benefits. *Cf. Brown v. Blue Cross and Blue Shield*, 898 F.2d 1556, 1564 (11th Cir. 1990) ("When the members of a tribunal—for example, the trustees of a pension fund—have a serious conflict of interest, the proper deference to give may be slight, even zero; the decision if wrong may be unreasonable.").

### B.

Blue Cross next argues that even under the less deferential standard described above, its decision to deny Bailey benefits was proper, because the policy's language unambiguously indicates that high dose chemotherapy is not covered. Construing the exclusion for "stem cell rescue (in which the patient is the donor) with high dose chemotherapy or radiation," Blue Cross essentially interprets "with" as unambiguously meaning "and." *Joint Appendix* at 180. In contrast, Bailey contends that the language is ambiguous as a matter of law. In assessing this argument, we must interpret the policy using ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense. *Hardester v. Lincoln Nat. Life Ins. Co.*, 33 F.3d 330, 338 (4th Cir.1994) (Hall, J., dissenting), *vacated on reh'g*, 52 F.3d 70 (4th Cir.1995) (en banc) (adopting panel dissenting opinion). "Where a term is ambiguous, we must construe it against the drafter, and in accordance with the reasonable expectations of the insured." *Wheeler*, 62 F.3d at 638 (citations omitted).

Both parties rely on our holdings in *Doe*, 3 F.3d at 80, and *Hendricks v. Central Reserve Life Ins. Co.*, 39 F.3d 507 (4th Cir.1994), as supporting their respective positions regarding whether the language at issue is ambiguous. In *Doe*, the "rescue" procedure preceding chemotherapy and radiation involved an autologous transplant of bone marrow, rather than peripheral stem cells. 3 F.3d at 82. The medical principles, however, were equivalent to those underlying the procedure for which Bailey seeks coverage. The insurance policy at issue in *Doe* excluded "services or supplies for or related to" the bone marrow transplant. *Id.* at 88. Elsewhere in the policy, coverage for chemotherapy and radiation specifically was provided. *Id.* at 87–88. Applying the less deferential abuse of discretion standard discussed above, we held that the policy covered the high dose chemotherapy portion of a cancer patient's treatment, *id.* at 89.

In contrast, we held in *Hendricks* that the plaintiff's insurance policy did not cover high dose chemotherapy. The policy at issue in that case excluded "treatment or services experimental or investigational in nature." 39 F.3d at 511. After ruling that the desired HDC/PSCR treatment fell within the exclusion, the court rejected the plaintiff's argument that phases of the treatment other than the high dose chemotherapy itself were covered. "[T]o fragment the phases of treatment and consider each in light of the policy language produces an unrealistic and distorted analysis." *Id.* at 514.

Applying these cases, the ambiguity in Bailey's policy becomes apparent. The desire in *Hendricks* to avoid excessive fragmentation supports Blue Cross's view that HDC/PSCR is a unified treatment. On the other hand, if high dose chemotherapy was not a service "related to" the autologous bone marrow transplant in *Doe*, it is reasonable to conclude that the policy exclusion covers only the dis-

tinct PSCR. Moreover, as the district court found, "[t]he record does not preclude the possibility that there may indeed be cases where HDC is not accompanied by PSCR." *Joint Appendix* at 371. That possibility is consistent with Bailey's interpretation of the policy as providing coverage for all types of chemotherapy—including treatment with high doses.

We have held repeatedly that ambiguous language must be construed against the drafter. *Doe,* 3 F.3d at 89; *Glocker v. W.R. Grace & Co.,* 974 F.2d 540, 544 (4th Cir.1992). Particularly because "Blue Cross' discretionary interpretation to the contrary is not entitled to the deference we might otherwise accord," *Doe,* 3 F.3d at 87, the district court's ruling prohibiting Blue Cross from denying coverage for Bailey's high dose chemotherapy was proper as a matter of law.

### C.

■■■ Finally, Blue Cross contends that even if the policy language is ambiguous, the district court erred by granting summary judgment, because Bailey failed to present extrinsic evidence as to meaning of the disputed terms. In *Goodman v. Resolution Trust Corp.,* 7 F.3d 1123 (4th Cir.1993), we noted, however, that:

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible to two reasonable interpretations." ... If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. *Even where a court, however, determines as a matter of law that the contract is ambiguous, it may examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispos-itive of the interpretative issue, grant summary judgment on that basis.*

*Id.* at 1126 (quoting *World–Wide Rights Ltd. Partnership v. Combe Inc.,* 955 F.2d 242, 245 (4th Cir.1992)) (emphasis added and internal citations omitted). Thus, while summary judgment typically is improper when a contract's language is ambiguous, it is appropriate where the evidence indicates that the moving party is entitled to judgment as a matter of law.

In this case, Blue Cross and Bailey filed cross-motions for summary judgment, demonstrating that each believed there were no disputed, material issues of fact. If the parties had negotiated regarding the policy's terms, extrinsic evidence concerning their intent might have been revealing. Here, though, we are presented only with boilerplate language that has replaced any negotiation process. "Where a case turns simply upon a reading of the document itself," *Hendricks,* 39 F.3d at 512, summary judgment may be available despite a contract's ambiguity. Based on its plain language, coverage for high-dose chemotherapy under Bailey's policy is ambiguous as a matter of law. Because such provisions are construed against the drafter, *Doe,* 3 F.3d at 89, summary judgment was proper.

### III.

Accordingly, the judgment of the district court granting summary judgment in favor of Bailey is

*AFFIRMED.*