Douglas Y. TESTER, as Personal Representative of the Estate of Annie Ruth Tester, Deceased, Plaintiff–Appellee,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 97–1589.

United States Court of Appeals, Fourth Circuit.

Argued: Sept. 24, 1998

Decided: Sept. 25, 2000

**ARGUED:** Michael J. Burns, Christie, Pabarue, Mortensen & Young, P.C., Philadelphia, Pennsylvania, for Appellant. Robert Edward Hoskins, Foster & Foster, L.L.P., Greenville, South Carolina, for Appellee. **ON BRIEF:** James A. Young, Christie, Pabarue, Mortensen & Young, P.C., Philadelphia, Pennsylvania; Heyward E. McDonald, McDonald, McKenzie, Rubin, Miller & Lybrand, Columbia, South Carolina, for Appellant.

Before WIDENER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge WILLIAMS and Judge MICHAEL joined.

## OPINION

WIDENER, Circuit Judge:

Defendant, Reliance Life Insurance Co. (Reliance), appeals the district court's judgment awarding death benefits to plaintiff, Douglas Tester. Mr. Tester, as a personal representative of the estate of his wife Annie Ruth Tester, filed this complaint in district court alleging that Reliance improperly withheld death benefits due him in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* The first cause of action alleged that pursuant to 29 U.S.C. § 1132(a)(1)(B) Reliance wrongfully refused to pay him death benefits under a group accidental death insurance plan issued by Reliance and administered by Mrs. Tester's employer, The Bibb Company (Bibb). Alternatively, the second cause of action alleged that Reliance should pay Mr. Tester death benefits because it breached a fiduciary duty to Mrs. Tester under 29 U.S.C. § 1104 by failing to advise her that her coverage under the group plan terminated at the beginning of February 1995, thus denying her the opportunity

to exercise conversion privileges available under the plan. Under either theory, Mr. Tester sought payment of $50,000 in death benefits, plus attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

After denying motions for summary judgment, the district court conducted a bench trial. The court found that the Reliance policy covered Mrs. Tester at the time of her death and was of opinion that Reliance improperly denied Mr. Tester death benefits under the group insurance plan. The district court further held, alternately, that Reliance breached a fiduciary duty owed to Mrs. Tester by failing to notify her of its claimed coverage termination which deprived her of the opportunity to convert her coverage under the policy. The court entered judgment in the amount of $50,000 plus interest and costs against Reliance. Reliance then filed this appeal. For the reasons stated below, we affirm the district court's judgment on the first cause of action. We conclude that the policy covered Mrs. Tester at the time of her death and that Reliance owed death benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).[1]

Mrs. Tester began working for Bibb on June 1, 1993. At the time of her death, she was on medical leave from her position as a creeler weaver at Bibb's plant in Greenville, South Carolina. Her regular work schedule consisted of thirty-six hours one week and forty-eight hours the next.

Reliance issued a policy for group accident coverage to Bibb that became effective August 1, 1993. Bibb distributed a Certificate of Insurance to each participating employee that explained the basic policy terms and conditions. Mrs. Tester's coverage under the policy became effective on September 1, 1993 and provided for a death benefit to the designated beneficiary of $50,000. Mrs. Tester named her hus-

---

1. Because we affirm the district court's decision on the first cause of action in this case, it is unnecessary to consider Mr. Tester's alternative argument for recovery under a breach of fiduciary duty theory.

band as her sole beneficiary under the policy.

The policy provided the conditions under which Reliance could terminate an employee's coverage. The policy states: "An Insured Person's coverage will terminate on the first of the following to occur: ... The first of the Policy month coinciding with or next following the date the Insured Person ceases to be in a class eligible for this insurance."[2] The policy defines whether an employee qualifies as a member of a class eligible for insurance according to this provision: "ELIGIBILITY: Each active, Full-time and Part-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications: Class 1: salaried employee, Class 2: hourly employee." Further, the policy defines a "Full-time" or "Part-time" employee as one who works "a minimum of 20 hours during [the] person's regularly scheduled work week."

The last day that Mrs. Tester worked on the job in the plant at Bibb was January 8, 1995. On that day, she took an approved medical leave because of health problems unrelated to her later accidental death. Subsequently, Mrs. Tester, on February 15, 1995, died from injuries sustained as a passenger in an automobile accident on that same day, at which time she had not yet returned to work. Mr. Tester applied for death benefits on March 29, 1995, and Bibb submitted his application to Reliance. Before receiving the application, Reliance was unaware of Mrs. Tester's leave of absence or her recent death. Shawn Ab-

ner, a Senior Claims Examiner for Reliance, wrote to Bibb on April 5, 1995 requesting information concerning Mrs. Tester's last day of work. On April 10, 1995, Miss Abner was told that the last day that Mrs. Tester actually worked was January 8, 1995.

Miss Abner reviewed Mr. Tester's claim application, the policy language, and the information regarding Mrs. Tester's last day of work and concluded that Mrs. Tester's coverage had terminated on February 1, 1995, the first of the month next following the beginning of medical leave because Mrs. Tester ceased to be a "member of the eligible class" on January 8, 1995. She advised Bibb and Mr. Tester in writing that no benefits were available and explained the procedures for requesting a review of Reliance's decision. On February 13, 1996, Mr. Tester filed for a review of Reliance's decision upon the grounds that Bibb still considered Mrs. Tester to be an employee as of the date of her death. Reliance reviewed the appeal and, on March 14, 1996, affirmed its denial of benefits, explaining that Bibb's perspective on Mrs. Tester's employment status did not change the contractual terms, which required Mrs. Tester to be an "active" employee at the time of her death. It then took the position that the coverage ended January 8, 1995.[3]

In August 1996, Mr. Tester filed this ERISA action in district court to recover the death benefits. After conducting a bench trial, the district found that the

---

**2.** Other provisions for termination are described in the body of this opinion.

**3.** In a letter dated March 14, 1996 to Mr. Tester's attorney from one Beth Holcomb, a supervisor in the life claims department of Reliance, Reliance took the position that the insurance ended on January 8, 1995, the last day that Mrs. Tester worked at the plant.

In an earlier letter dated May 31, 1995 to Lucy Ware, an employee of Bibb, signed by Shawn Y. Abner, a senior examiner in that same department of Reliance, the insurance company took the position that the coverage had ended February 1, 1995, under the same

policy provision it later construed to have ended the coverage on January 8th.

Reliance in its brief now takes the position that the coverage ended on February 1, 1995, which would seem to be contrary to the wording of the policy which provides for "the first of the following [dates] to occur."

These different constructions of the same language in the same policy by two different employees and the attorneys for the same company only go to reinforce the opinion of the district court that the term "active" as an employee of The Bibb Company as described in the Reliance policy is ambiguous.

term "active" in the eligibility provision of the policy was vague and ambiguous. The court ruled that Reliance improperly denied Mr. Tester benefits because Mrs. Tester was an "active" employee under the policy's terms and entitled to coverage as of the date of her death. Reliance then appealed, challenging the district court's finding that the policy's terms were ambiguous and the district court's awarding of benefits to Mr. Tester. Therefore, we consider whether Mrs. Tester was an "active" employee under the terms of the policy and eligible for coverage at the time of her death, thus requiring Reliance to pay Mr. Tester death benefits.

■ In cases involving the denial of benefits under an ERISA plan, a reviewing court must review the denial *de novo* unless the terms of the plan give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. See *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017, 1021 (4th Cir.1993); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 107, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The district court reviewed Reliance's denial of benefits *de novo*, and Reliance does not challenge this standard on appeal. Therefore, we apply the same standard as the district court and review Reliance's denial *de novo*.

■ In reviewing the terms of an ERISA plan, we are mindful that ERISA plans are contractual documents, and "established principles of contract and trust law" govern their interpretation. See *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir.1996). As with other contractual provisions, we construe the plan's terms without deferring to either party's interpretation. See *Firestone Tire*, 489 U.S. at 112, 109 S.Ct. 948; *Wheeler v. Dynamic Eng'g Inc.*, 62 F.3d 634, 638 (4th Cir.1995) (stating that an ERISA plan should be interpreted "under ordinary principles of contract law"). Furthermore, "[w]here a term is ambiguous, we must construe it against the drafter, and in ac-

cordance with the reasonable expectations of the insured." *Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 57 (4th Cir.1995) (quoting *Wheeler*, 62 F.3d at 638).

■ The insurance policy defines class eligibility according to its eligibility provision. This provision states that "each active, Full-time and Part-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications: Class 1: salaried employee, Class 2: hourly employee." The policy further defines "Full-time" or "Part-time" employee as one who works a minimum of 20 hours during [the] person's regularly scheduled work week. Therefore, the policy provides coverage for an employee if the employee is "active" and works a minimum of 20 hours during the employee's regularly scheduled work week. The definition of "active" is necessary in determining whether Mrs. Tester was eligible for coverage at the time of her death. The policy, however, is ambiguous as to the meaning of "active" because it neither defines "active," nor provides criteria for determining when an employee is "active."

Reliance argues that the term "active" is unambiguous when it is interpreted in accordance with the policy's definition of the terms "actively at work" and "active work." The policy defines these phrases as satisfied when "the insured is performing on a Full-time or Part-time basis each and every duty pertaining to his job in the place where and in the manner in which the job is normally performed. This includes approved time off for vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness." Reliance argues that Mrs. Tester would not be covered because the meaning of "active" in the context of "actively at work" or "active work" specifically would exclude employees from coverage who take time off for an illness.

The policy's eligibility provision, however, does not include the phrase "actively at work" or "active work," and we will not read those terms into that provision. The policy does contain provisions that incorporate the phrases "actively at work" and "active work." But they are used with respect to *effective date,* not *eligibility.* The policy states: "EFFECTIVE DATE OF INDIVIDUAL INSURANCE: An eligible person must apply in writing for the insurance to go into effect. You will become insured on the later of ... if an eligible person is not actively at work on the day his insurance is to go into effect, his insurance will take effect on the date he returns to active work for one (1) full day." Thus the policy incorporates "actively at work" and "active work" to establish when an individual's coverage initially will begin. It does not incorporate those terms to determine if an employee is eligible for coverage. These terms have specific meanings within the provisions that include them, but they are absent in the eligibility provision, and thus do not control in defining "active."

The policy's terms also distinguish between being at "active work" and being a member of a "class eligible for this insurance." The policy provides in the reinstatement of coverage section that an employee "must return to active work with you (Bibb) within the period of time shown on the schedule of benefits. He must *also* be a member of a class eligible for this insurance" (italics added). The use of the word "also" may only indicate that the policy intentionally regards "active work" and "class eligible for this insurance" as two independent classifications or descriptions. Therefore, the phrases "actively at work" and "active work" should not be used to control the meaning of the term "active" in the eligibility provision.

Reliance next argues that Mrs. Tester was out on sick leave and, therefore, does not qualify as an "active, Full-time employee" because the term "active" requires a present work capability. According to the latest, March 14, 1996, Reliance interpretation of the policy before suit was filed, every time an employee calls in sick with a cold or leaves work early with a headache, or stays home with the flu, or a thousand other legitimate ailments, that employee's insurance coverage would terminate because the employee was no longer "active." Such an interpretation, however, would lead to absurd results outside of the insured's reasonable expectations. An employee reasonably would expect his coverage to extend beyond the time periods that he is physically at work and to cover those hours and days when he is out of the plant due to an illness. Reliance's construction of the term "active" does not eliminate the ambiguity of the eligibility provision because it unreasonably restricts coverage to the time that an employee is actually at work.

Reliance further argues that any ambiguities in the eligibility provision are cured by the phrase "Full-time." The policy defines "Full-time" as requiring an employee to work a minimum of 20 hours during the employee's regularly scheduled work week in order to qualify for the class eligible for insurance. According to Reliance, Mrs. Tester was not covered at the time of her death because she had been absent for several weeks and never fulfilled the minimum hourly requirement. This argument, however, contains the same vagueness and ambiguity as arguing that "active" means that the employee is physically at work. For example, under Reliance's interpretation of the policy an employee who works two eight-hour days and then dies in an automobile accident on route to work would not be covered because he had not accumulated the requisite 20 hours for coverage. No insured employee would reasonably expect his coverage to terminate if he died from an accident a few hours short of completing his mandatory 20–hour work week.

Reliance's policy does not define "active" in the employee eligibility provision nor does it contain any clear standard by

which this court may determine that an employee is not "active." The policy does not specify under what circumstances the employee must work, how frequently the employee must work, and how long the employee must be out of work before he is no longer considered "active." As is the case here, where a term is ambiguous, we must construe it against the drafter, and in accordance with the reasonable expectations of the insured. See *Bailey*, 67 F.3d at 57. A reasonable employee would not expect his insurance coverage to terminate if he takes a sick day or if he dies on account of an accident before working 20 hours in a particular week. An employee would reasonably expect that his coverage continues while he regularly works for the company, even if he is home with the flu or injured in a car accident. Therefore, the proper inquiry for considering whether Mrs. Tester was an "active, Full-time employee" under the policy at the time of her death depends on whether or not she worked at Bibb on a regular basis despite her sick leave.

At the time of Mrs. Tester's death, there is no indication that Bibb terminated her employment or temporarily laid her off, indeed the inference is to the contrary, for the claim form completed by Bibb shows that Mrs. Tester on January 8, 1995 was an "Active" employee on "Approved Leave of Absence" ... "Medical." The evidence also does not suggest that Mrs. Tester considered herself terminated. Rather, she continued to receive checks from Bibb after she left work on January 8, 1995, even though it was apparently for sick pay. Furthermore, Bibb withheld an insurance premium from Mrs. Tester's paycheck for the week ending January 14, 1995. Bibb then submitted this premium, which was accepted by Reliance, to Reliance on February 16, 1995, the day after Mrs. Tester's death. These facts indicate that Mrs. Tester was working for Bibb on a regular

basis and that she was simply out sick when she died.

Finally, we note that in the case of *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231 (4th Cir.1999), a case in which the employer was the administrator, as here, the court properly took account of the fact that the premiums on the insurance in question had been paid through the time when the insurance company defaulted on giving notice of conversion. *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d at 236. Indeed, *Lebowitz* held that the payment of the premiums on behalf of the employee was conclusive evidence that the employer considered the employee covered under the policy. While we need not go so far as to decide that the payment of premiums in the case at hand is conclusive, because there may be some difference in the status of the administrators of which we are not aware, we are of opinion that this is evidence of some considerable weight in the case and is not sufficiently disputed by the claim now made that the premiums were paid by mistake, which contention indeed is supported by little or nothing more than argument.

Accordingly, we are of opinion and decide that Mrs. Tester was an active employee of Bibb at the time of her death within the meaning of the policy and that the plaintiff, her husband, is entitled to the benefits therefrom.

The judgment of the district court is accordingly

AFFIRMED.[4]

4. Reliance claims as erroneous the admission of the testimony of Douglas Tester about Mrs. Tester's intention to resume work as soon as she was able and about a prior medical leave

taken by Mrs. Tester. It also claims as erroneous admitting an excerpt from an ITT Hartford policy issued to an employer other than Bibb. We are of opinion the testimony of Mr.

Tester was admissible under *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017 (4th Cir.1993), as "necessary for the district court to conduct an adequate de novo review of an ERISA claim." The introduction of the ITT Hartford policy, we think, was error, but harmless and not reversible. We have not considered the evidence of the ITT Hartford policy in arriving at our decision; and in all events, vacation of the district court's judgment on that account is not required to obtain substantial justice. See 28 U.S.C. § 2111; Fed.R.Evid. 61; *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1135 (4th Cir.1988).