**Diane GAWRYSH, Plaintiff,**

v.

**CNA INSURANCE COMPANY, Defendant.**

**No. 96 C 8356.**

United States District Court, N.D. Illinois, Eastern Division.

June 5, 1998.

Ashley S. Rose, Law Offices of Ashley S. Rose, Glen Ellyn, IL, for Plaintiff.

Carol Proctor, Hinshaw & Culbertson, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiff, Diane Gawrysh, sued the defendant, CNA Insurance Company ("CNA"), under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1000 *et seq.* Ms. Gawrysh argues the denial of her long-term disability ("LTD") benefits violates ERISA. CNA and Ms. Gawrysh both move for summary judgment. For the following reasons, Ms. Gawrysh's motion is granted and CNA's motion is denied.

## Background[1]

Diane Gawrysh seeks LTD benefits under an insurance policy ("Plan") issued by CNA to her former employer, Boise Cascade Corporation ("Boise Cascade"). Ms. Gawrysh worked as an accounting supervisor at Boise Cascade. (CNA Rule 12(M) Statement ¶ 3). In March, 1995, Ms. Gawrysh applied for LTD benefits. On her application, Ms. Gawrysh indicated she became totally disabled on November 11, 1994. (CNA Rule 12(M) Statement ¶ 7). Ms. Gawrysh described her disability as chronic fatigue, sinus problems, severe headaches, and depression. (CNA Rule 12(M) Statement ¶ 8). As part of her application, Ms. Gawrysh submitted a statement from her attending physician, Charlotte Blain. (CNA Rule 12(M) Statement ¶ 10). Dr. Blain's statement indicates Ms. Gawrysh suffers from Chronic Fatigue Syndrome, sinusitis with intractable headache,[2] recurrent sinus infections, and Bronchitis.

On April 28, 1995, Joye Kelly, a Claims Specialist for CNA, acknowledged receipt of Ms. Gawrysh's application for LTD benefits. CNA, as Plan administrator, obtained Ms. Gawrysh's medical records and a letter from Dr. Blain explaining Ms. Gawrysh's Chronic Fatigue Syndrome diagnosis. (CNA Rule 12(M) Statement ¶ 12; Ex. J). Dr. Blain stated that in May, 1992, Ms. Gawrysh began to suffer from "persistent fatigue that was not related to exertion, was not alleviated by bedrest and caused her substantial reduction in her previous level of activities." (Df. Ex. J at 1). The fatigue was accompanied by "symptoms of impairment in short-term memory and concentration, recurrent sore throat, lymph node swelling, myalgias and arthralgias, headaches and sleep disturbance." Id. Dr. Blain initially did not believe Ms. Gawrysh's sinus problems were causing the fatigue, although she noted Ms. Gawrysh underwent two surgeries to deal with sinusitis. Ms. Gawrysh began taking decongestants, Vitamin B12, and gamma globulin injections. Id. Dr. Blain diagnosed Chronic Fatigue Syndrome based on the definition set forth in the Annals of Internal Medicine, which indicates Chronic Fatigue Syndrome is the "onset of persistent or relapsing fatigue or easy fatigability in a person who had no history of similar symptoms, that did not resolve with bed rest and was severe enough to reduce or impair her daily activities below 50% of premorbid activity level." Id. at 2.

Dr. Blain noted Ms. Gawrysh's condition persisted over the following years with increased sinusitis problems. Id. Repeated attempts to treat the fatigue were unsuccessful. Dr. Blain opined that there was "no question" Ms. Gawrysh was unable to work. Id. at 3.

1. Under the Local Rules for the Northern District of Illinois a party moving for summary judgment must attach a "statement of material facts as to which the moving party contends there is no genuine issue" and must support the statement with "references to the affidavits, parts of the record, and other supporting materials...." (Local Rule 12(M)(3) & (3)(b)). A party opposing summary judgment must respond to the moving party's facts and, in the case of disagreement, cite to "specific references to the affidavits, parts of the record, and other supporting materials ..." to support the disagreement. (Local Rule 12(N)(3)(a)). The Seventh Circuit has consistently upheld the strict application of the Local Rules. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992). Compliance with Local Rules 12(M) and 12(N) saves significant judicial resources by parsing out the contested factual issues for the court and providing a basis for factual disputes. Parties that refuse to follow the Local Rules waste the court's time and delay the judicial process. Still, there are numerous practitioners before this court that, for reasons unknown, have decided it is unnecessary to follow the Local Rules. Ms. Gawrysh's counsel is one such practitioner. Ms. Gawrysh's purported "Rule 12(M) Statement" is her affidavit. An affidavit, as made clear by the plain language of Rule 12(M), is not the proper form for a 12(M) statement of facts. Accordingly, it is stricken. Since Ms. Gawrysh's motion for summary judgment does not extensively rely on her Rule 12(M) Statement, it will still be considered. Ms. Gawrysh's Rule 12(N) response constantly denies the facts set forth in CNA's Rule 12(M) Statement without proper citation to the record, sometimes citing to her own Rule 12(M) Statement. Denying a particular fact and telling the court to "see" another Rule 12 statement is improper. Accordingly, all those paragraphs to which Ms. Gawrysh did not properly respond are deemed admitted.

2. Sinusitis is defined as "[i]nflammation of the lining membrane of any sinus, especially of one of the paranasal sinuses." Stedman's Medical Dictionary 1294 (5th Unabridged Lawyer's ed.1982).

Under CNA's Plan, a "total disability" is defined as:

"Total Disability" means that, during the Elimination Period and the Insured Employee occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period shown in Statement 4 of the Application, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

(1) continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and

(2) under the regular care of a licensed physician other than himself.

(CNA Rule 12(M) Statement ¶ 15).

On August 1, 1995, CNA denied Ms. Gawrysh LTD benefits. (CNA Rule 12(M) Statement ¶ 13). CNA decided Ms. Gawrysh's maladies did not meet the Center for Disease Control's ("CDC") definition of Chronic Fatigue Syndrome. (Df.Ex. F). CNA believed Ms. Gawrysh's chronic sinus problems could be the cause of her persistent fatigue. *Id.* CNA also noted Ms. Gawrysh had three small children and worked in a stressful environment, finding both factors could lead to fatigue. In sum, CNA found the objective medical documentation did not support Ms. Gawrysh's claim that she was "continuously unable to perform the substantial and material duties of [her] regular occupation." *Id.*

Ms. Gawrysh retained counsel and appealed CNA's decision. Dr. Blain submitted another letter discussing Ms. Gawrysh's medical condition. (Df.Ex. H). Dr. Blain again indicated there was no doubt in her mind Ms.

Gawrysh suffered from Chronic Fatigue Syndrome and had an extensive history of chronic sinusitis. (Df. Ex. H at 1). Ms. Gawrysh required two sinus surgeries to alleviate "marked" inflammation of the sinuses. Neither surgery eased Ms. Gawrysh's "debilitating headaches, constant low grade fever, chills, fatigue, glandular swelling, and congestion." *Id.* at 2. Due to constant ear congestion, Ms. Gawrysh had tubes placed in her ears on July 10, 1995. *Id.* Dr. Blain cited a 1995 medical study that found systemic signs of chronic sinusitis, such as fatigue, are more prevalent than previously known and indicate sinusitis is a very debilitating disease. Dr. Blain also noted Ms. Gawrysh had increased antibody levels (elevated titers) to the Epstein–Barr virus; a virus frequently noted in patients with infectious mononucleosis. Stedman's Medical Dictionary 1561 (5th Unabridged Lawyer's ed.1982).

CNA reviewed Ms. Gawrysh's medical records, reviewed a description of the duties of an accounting supervisor, and conducted a telephone interview with Ms. Gawrysh. (CNA Rule 12(M) Statement ¶¶ 21–23). On December 7, 1995, CNA informed Ms. Gawrysh it was upholding its decision to deny LTD benefits. (CNA Rule 12(M) Statement ¶ 19). CNA found that, although Ms. Gawrysh's sinus surgery might have caused a period of disability, there was insufficient objective medical documentation to find Ms. Gawrysh' sinus problems were still debilitating. (Df. Ex. I at 2).[3] CNA noted David Caldarelli, Ms. Gawrysh's sinus surgeon, found Ms. Gawrysh was improving after her second surgery and, when asked by CNA to provide documentation of a disability, responded with a single sentence stating he had only treated Ms. Gawrysh for "sinus conditions." *Id.* This suit followed.

### Review of Denial of Benefits

■ Both parties agree that CNA's decision to deny Ms. Gawrysh LTD benefits should be reviewed under the arbitrary and capricious standard. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 921 (7th Cir.1996) (finding that where a plan confers upon an administrator discretion to interpret it, challenges

3. Under the Plan, benefits are only paid if a disability extends beyond 180 days. (Df.Ex. E).

to the administrator's interpretations are to be reviewed under the arbitrary and capricious standard). Under the arbitrary and capricious standard, CNA's decision must be "based on a reasonable interpretation of [the Plan] and an adequate consideration of the relevant factual circumstances." *Russo v. Health, Welfare, & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993); *accord Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990) (finding that for plan administrator to abuse discretion, interpretation must be "downright unreasonable").

While CNA's interpretation is entitled to great deference, review is still required. CNA's decision will not stand if it:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Under an arbitrary and capricious standard a court should consider "the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995). In reviewing CNA's decision, I may only consider the evidence before CNA at the time of its determination. *Trombetta v. Cragin Fed. Bank for Sav.*

*Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 n. 1 (7th Cir.1996).[4]

The complexity of the issues favors Ms. Gawrysh. The diagnosis of Chronic Fatigue Syndrome is not a simple matter. Generally, Chronic Fatigue Syndrome is considered the sudden onset of debilitating fatigue that is not caused by other illness and has a variety of symptoms, including mild fever, sore throat, painful lymph nodes, mild headaches, and forgetfulness. (Df. Ex. N at 11–12). But no medical test exists for the diagnosis of Chronic Fatigue Syndrome. *Id.* at 7. Rather, to diagnose Chronic Fatigue Syndrome, the CDC requires a physician to rule out other clinically defined causes of chronic fatigue by using a variety of medical tests. *Id.*

As noted from Ms. Gawrysh's medical records and Dr. Blain's letters, Ms. Gawrysh suffered the sudden onset of most of the symptoms of Chronic Fatigue Syndrome. CNA concluded that since Ms. Gawrysh's symptoms may have been caused by her sinusitis, it was improper to conclude she had Chronic Fatigue Syndrome. This reasoning is shortsighted. CNA did not deny Ms. Gawrysh's symptoms existed or had a debilitating effect, but concluded that because the symptoms could not, with complete certainty, be linked to a specific illness, Ms. Gawrysh was not totally disabled. The uncontroverted evidence indicates Ms. Gawrysh's symptoms were debilitating and were consistent with a diagnosis of Chronic Fatigue Syndrome. Rather than punishing Ms. Gawrysh for the inability of medicine to specifically pinpoint the cause of her debilitating fatigue, CNA should have hired experts or used its own doctors to examine Ms. Gawrysh to determine the cause and degree of her fatigue. CNA simply denied benefits.[5]

---

4. Although it appears CNA was not an impartial decisionmaking body since it was responsible for paying LTD benefits as well as deciding which individuals received benefits, the Seventh Circuit has recently announced a district court should presume a fiduciary's neutrality "unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict." *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan,* 144 F.3d 1014, 1020 (7th Cir. 1998). The Seventh Circuit has rejected the idea that there exists an "inherent relational conflict" sufficient to overcome the presumption of neu-

trality when a fiduciary is also responsible for paying benefits. *Id.* Ms. Gawrysh has not presented any specific evidence to overcome the presumption of neutrality.

5. CNA puts great weight in the suggestion that Dr. Blain's letters on behalf of Ms. Gawrysh are contradictory. CNA argues that in her first letter, Dr. Blain diagnosed Chronic Fatigue Syndrome as the cause of Ms. Gawrysh's ailments, but in her second letter Dr. Blain suggested Ms. Gawrysh's chronic fatigue was caused by sinusitis. (Df. Exs. H & J). Having reviewed the

Ms. Gawrysh's increased antibody levels to the Epstein–Barr virus, a symptom commonly seen in mononucleosis sufferers, is further evidence she suffered from debilitating fatigue. CNA argues that in a CDC guide to Chronic Fatigue Syndrome, the CDC noted medical studies have found elevated antibody levels to the Epstein–Barr virus are not correlated to Chronic Fatigue Syndrome. (Df. Ex. N at 9). In the same guide, however, the CDC noted that, while elevated antibody levels should not be used to diagnose Chronic Fatigue Syndrome, medical studies have found elevated antibody levels are commonly found in Chronic Fatigue Syndrome patients. *Id.* Further, in a document published by the CDC in 1994 titled "The Chronic Fatigue Syndrome: A Comprehensive Approach to Its Definition and Study," the authors indicate elevated antibody levels to the Epstein–Barr virus neither confirm nor exclude the diagnosis of chronic fatigue syndrome. (Df. Ex. M at 955). Either way, the increased antibody levels support Dr. Blain's statements regarding Ms. Gawrysh' debilitating fatigue. Instead of explaining why the elevated antibody levels may not be important, CNA should have considered the increased antibody levels as further evidence of disability that required additional testing and consideration.

CNA's decision to deny benefits is also questionable given its concession that Ms. Gawrysh suffered from a disability at the time of her two sinus surgeries. (Df. Ex. I at 2). Dr. Blain's letters indicate the same symptoms that existed before the sinus surgeries existed after the sinus surgeries. In fact, Ms. Gawrysh had to have tubes placed in her ears on July 10, 1995, to deal with constant ear congestion. Given the evidence presented, to presume, without independent testing, that a disability that existed before and during Ms. Gawrysh's two surgeries no longer existed after the surgeries is illogical.

CNA argues that Ms. Gawrysh's sinus surgeon, Dr. Caldarelli, did not believe she suffered from a disability. CNA bases this argument on a selected reference from Dr. Caldarelli's medical records and his response to CNA's request for information. On April 24, 1995, Dr. Caldarelli noted that "Diane Gawrysh is feeling a bit better after starting Clindamycin a wk. ago." (Df.Ex. J). A single sentence indicating Ms. Gawrysh was feeling a "bit" better after starting a new medication does not indicate how Dr. Caldarelli viewed Ms. Gawrysh's medical problems.

Dr. Caldarelli responded to CNA's request for medical information by stating he had only treated Ms. Gawrysh for sinus conditions. *Id.* CNA argues that if Dr. Caldarelli believed Ms. Gawrysh suffered from a disability, he would have expanded upon his comments. The form CNA sent to Dr. Caldarelli, however, did not ask whether Ms. Gawrysh suffered from a disability. Rather, it requested medical records, physical findings from the most recent examination, and medications prescribed. *Id.* Dr. Caldarelli forwarded all of Ms. Gawrysh's medical records to CNA.[6] Dr. Caldarelli was not Ms. Gawrysh's primary care physician. There is no evidence Dr. Caldarelli knew Ms. Gawrysh's occupation or what definition of "disabled" CNA was utilizing in reviewing Ms. Gawrysh's illness. It was improper to conclude, based on this evidence, that Dr. Caldarelli did not view Ms. Gawrysh as disabled.

Finally, CNA has provided no information about the qualifications of the individuals who reviewed Ms. Gawrysh's LTD benefits

letters, I do not find them inconsistent. In both letters Dr. Blain opined Ms. Gawrysh suffered from a debilitating fatigue marked by a specific array of symptoms. The first letter indicates these symptoms are consistent with Chronic Fatigue Syndrome. The second letter does not deviate from this opinion but actually lends more evidence to a Chronic Fatigue Syndrome diagnosis. The second letter also expands on the details of Ms. Gawrysh's sinus problems suggesting the sinusitis may also be responsible for the chronic fatigue. The expanded discussion of sinusitis in the second letter does not render it contradictory with the first letter. The letters are entirely consistent in one sense: they indicate Ms. Gawrysh suffers from a debilitating fatigue. Instead of looking for contradictions, CNA should have considered the possibility Ms. Gawrysh suffered from a complicated medical problem that required further testing and examination.

6. Even with Ms. Gawrysh's medical records, CNA provides no evidence that it considered the medications Ms. Gawrysh was taking or how these medications would affect her ability to work as an accounting supervisor.

request. CNA attaches the affidavit of Joye Kelly, the Disability Specialist assigned to Ms. Gawrysh's claim. Based on her affidavit and the record, there is no evidence Ms. Kelly has any medical training. It is impossible to know whether Ms. Kelly is experienced with claims involving Chronic Fatigue Syndrome. In sum, it does not appear a qualified decisionmaker reviewed Ms. Gawrysh's case, calling into question whether Ms. Gawrysh received the process she was due.

### Conclusion

There is an abundance of uncontroverted evidence that Ms. Gawrysh suffers from a debilitating fatigue. CNA chose to ignore this evidence and found, since it was unclear whether Ms. Gawrysh's fatigue was due to Chronic Fatigue Syndrome or chronic sinusitis, that Ms. Gawrysh must not be totally disabled. If CNA doubted the legitimacy of Ms. Gawrysh's claims, it should have had outside experts examine Ms. Gawrysh and attempt to pinpoint the severity and cause of the fatigue. It did not. Instead, CNA utilized a Disability Specialist, Joye Kelly, who the record suggests had no medical training or experience with fatigue to review Ms. Gawrysh's medical records. CNA acted arbitrarily and capriciously in finding Ms. Gawrysh was continuously able "to perform the substantial and material duties of [her] regular occupation." Accordingly, CNA's motion for summary judgment is denied and Ms. Gawrysh's motion for summary judgment is granted.[7]

---

7. Based on the evidence presented, during the time period in question, Ms. Gawrysh was not "gainfully employed in any occupation for which [she] is or becomes qualified by education, training, or experience." To the extent CNA found otherwise, its decision was arbitrary and capricious. In granting Ms. Gawrysh's motion for summary judgment, however, I offer no opinion as to whether Ms. Gawrysh is "continuously un-able to engage in any occupation for which [she] is or becomes qualified by education or training ..." and thus, will continue to qualify for LTD benefits under the Plan after her initial LTD benefits expire. It is possible her symptoms will improve or have improved and there is a less demanding occupation appropriate for her. CNA never reached this issue because it denied Ms. Gawrysh her initial LTD benefits.